FILED

2013 NOV 27 P 2: 46

1 | CHUCK P. EBERTIN (SBN 161374)
  | cebertin@velaw.com
2 | VINSON & ELKINS LLP
  | 1841 Page Mill Road, Suite 200-B
3 | Palo Alto, CA 94304
  | Tel: (650) 687-8200 / Fax: (650) 618-1970
4 |
  | Attorneys for Plaintiff
5 | SANDISK CORPORATION

6

7

8 | **IN THE UNITED STATES DISTRICT COURT**                                    RS

9 | **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10 |                                    CV 13    80    271MISC

11 | SANDISK CORPORATION,                          Misc. Case No._____
                                                 [Related to Action Currently Pending in
12 |            Plaintiff,                         the U.S. District Court, N.D. Cal.
                                                 Case No. 3:11-cv-05243-RS]
13 | vs.

14 | IPVALUE MANAGEMENT INC.,                      **SANDISK CORPORATION'S
                                                 NOTICE OF MOTION, MOTION
15 |            Defendant.                         AND MEMORANDUM IN SUPPORT
                                                 OF ITS MOTION TO COMPEL
16 | IN RE: SUBPOENA ISSUED IN:                    PRODUCTION OF SUBPOENAED
                                                 DOCUMENTS FROM IPVALUE
17 | SANDISK CORPORATION,                          MANAGEMENT INC.**

18 |            Plaintiff and Counterclaim Defendant,

19 | vs.

20 | ROUND ROCK RESEARCH LLC,

21 |            Defendant and Counterclaim Plaintiff.

22

23

24 | # REDACTED VERSION
25

26

27

28

---

**SANDISK'S MOTION TO COMPEL IPVALUE'S**                          Case No. _____
**PRODUCTION OF DOCUMENTS**
2193019

1

# TABLE OF CONTENTS

2

Page

3   I.   INTRODUCTION ................................................................................................................ 1

4   II.   FACTUAL BACKGROUND ............................................................................................. 1

5     A.   The Nature of the Round Rock–IPValue Relationship.................................................. 1

6     B.   Documents Being Withheld: "Wu Documents," "Anonymous Spreadsheets,"
7       and "Business Emails" ................................................................................................. 2

  III.   ARGUMENT ..................................................................................................................... 4
8

9     A.   Legal Standard ............................................................................................................. 4

10       1.   Work Product ...................................................................................................... 4

11       2.   Attorney-Client Privilege .................................................................................. 4

12       3.   Privilege Logs Must Be Sufficiently Detailed to Enable Other Parties
        to Assess the Claim............................................................................................ 5

13     B.   The Wu Documents, Anonymous Spreadsheets, and Business Emails Should
14       Be Produced Because the Privilege Log Is Insufficient.............................................. 6

15     C.   Attorney-Client Privilege Does Not Apply to the Wu Documents, Anonymous
      Spreadsheets, and Business Emails............................................................................. 7

16     D.   Attorney Work Product Does Not Apply to the Wu Documents, Anonymous
17       Spreadsheets, and Business Emails............................................................................. 9

    E.   Common Interest Doctrine Does Not Create a Privilege........................................... 10
18

19   IV.   CONCLUSION................................................................................................................ 11

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Advante Int'l Corp. v. Mintel Learning Co.,*
No. C 05-01022, 2008 WL 108900 (N.D. Cal. Jan. 2, 2008) ......................................................... 5, 6

5

6

*Conner Peripherals v. W. Digital Corp.,*
No. C93-20117 RMW/EAI, 1993 WL 726815 (N.D. Cal. June 8, 1993) ................................. 4, 10

7

*Diagnostics Systems Corp. v. Symantec Corp.,*
No. SA CV 06-1211 DOC (ANx), 2008 WL 9396387 (C.D. Cal. Aug. 12, 2008) .................. 8, 9, 10

8

9

*Elan Microelectronics Corp. v. Apple, Inc.,*
No. C 09-01531 RS (PSG), 2011 WL 3443923 (N.D. Cal. Aug. 8, 2011) ................................ 4, 5, 6

10

*Hickman v. Taylor,*
329 U.S. 495 (1947) ...................................................................................................................... 4

11

12

*In re Grand Jury Investigation,*
974 F.2d 1068 (9th Cir. 1992) ..................................................................................................... 5, 6

13

*In re Grand Jury Subpoena,*
357 F.3d 900 (9th Cir. 2004) ........................................................................................................ 4

14

15

*In re Rivastigmine Patent Litigation,*
237 F.R.D. 69 (S.D.N.Y. 2006) ................................................................................................... 7

16

*IP Co., LLC v. Cellnet Technology, Inc.,*
No. C08-80126 MISC MMC (BX), 2008 WL 3876481 (N.D. Cal. Aug. 18, 2008) ................... 11

17

18

*Kelly v. City of San Jose,*
114 F.R.D. 653 (N.D. Cal. 1987) ................................................................................................. 4

19

*Lenz v. Universal Music Corp.,*
No. C 07-3783 JF (RS), 2009 WL 3573990 (N.D. Cal. Oct. 30, 2009) ...................................... 7, 9

20

*Martin v. Evans,*
No. C 08-4067 JW (MEJ), 2012 WL 1894219 (N.D. Cal. May 23, 2012) ................................... 4

21

22

*Nidec Corp. v. Victor Co. of Japan,*
249 F.R.D. 575 (N.D. Cal. 2007) ................................................................................................ 11

23

*Oracle America, Inc. v. Google, Inc.,*
No. C-10003561-WHA (DMR), 2011 WL 3794892 (N.D. Cal. Aug. 26, 2011) ......................... 7

24

25

*Smithkline Beechman Corp. v. Apotex Corp.,*
193 F.R.D. 530 (N.D. Ill. 2000) .................................................................................................. 6

26

*U.S. v. ChevronTexaco Corp.,*
241 F. Supp. 2d 1065 (N.D. Cal. 2002) ................................................................................. *passim*

27

28

---

**SANDISK'S MOTION TO COMPEL IPVALUE'S**
**PRODUCTION OF DOCUMENTS**
2193019

ii

Case No. _____

*U.S. v. Gray,*
876 F.2d 1411 (9th Cir. 1989) ..................................................................................................... 5

*U.S. v. Richey,*
632 F.3d 559 (9th Cir. 2011) ..................................................................................................... 4

**Rules**

Fed. R. Civ. P. 26(b)(3) advisory committee's note (1970) ................................................................. 4

Fed. R. Civ. P. 26(b)(5)(A) ................................................................................................................. 5

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE THAT as soon as this matter may be heard before the United
4  States District Court for the Northern District of California, plaintiff SanDisk Corporation
5  ("SanDisk"), pursuant to Federal Rules of Civil Procedure 26, 37, and 45, will, and hereby does,
6  move for an Order compelling IPValue Management Inc. ("IPValue") to provide a more complete
7  production of subpoenaed materials and to otherwise supplement its deficient document responses
8  within ten calendar days of the date of any order resulting from this motion. The subpoena was
9  issued and served in this District. This motion is based on this Notice of Motion and Motion, the
10  following memorandum, the pleadings and papers on file herein, any oral argument before the Court,
11  and any other matters the Court may request or consider.

12

13  **I.**    **INTRODUCTION**

14    "Corporations may not conduct their business affairs in private simply by staffing a
15  transaction with attorneys." *U.S. v. ChevronTexaco Corp.,* 241 F. Supp. 2d 1065, 1076 (N.D. Cal.
16  2002). This motion against IPValue—and the related motion against Round Rock (Case No. 3:11-
17  cv-05243-RS)—arises out of IPValue's broad assertions of attorney-client privilege and work
18  product protection as to dozens of business, technical, and patent valuation documents simply
19  because they were created by unnamed employees who may or may not have been attorneys, and
20  some of which are allegedly based on the advice of an in-house attorney acting in a non-legal
21  capacity. As will be demonstrated below, these non-privileged documents were generated as part of
22  the regular business of IPValue and should be produced.

23  **II.**    **FACTUAL BACKGROUND**

24    **A.**    **The Nature of the Round Rock–IPValue Relationship**

25                , Micron Technology, Inc. ("Micron") sold roughly 4,200 patents and
26  patent applications to a non-practicing entity called Round Rock Research LLC ("Round Rock")
27                                          [Ebertin

28

1   Decl. Ex. A, RRR-SAND00004729.[1]]   That same day,

2

3

4                                [Ex. B, GEM-SAND000003 (

5                      ) at ¶ 3.1; *see also* Ex. C, deBlasi Dep. Tr. at 65:19–25 (Sep. 23, 2013)

6   (former executive at IPValue and current Round Rock CEO testifying

7                                                      ).]

8        Both Round Rock and IPValue agreed that IPValue

9

10

11   [Ex. B at ¶ 4.3.]   Round Rock represented this much to this Court, stating that IPValue and its in-

12   house counsel, Andrew Wu, were not hired to provide legal advice:

13        Round Rock did not retain a California-Licensed attorney. . . .   While SanDisk makes
        much of the fact that one such IPValue employee—Andrew Wu—is a California-
14        licensed attorney (SanDisk Br. at 5), Round Rock did not retain either IPValue (which
        is not a law firm) or Mr. Wu to act as *attorneys* for Round Rock.   IPValue's decision to
15        staff Mr. Wu in connection with providing contractual services to Round Rock thus
        does not demonstrate *Round Rock's* purposeful availment of California laws.
16

17   [Dkt. No. 45 (Def.'s Reply in Supp. of Its Mot. to Dismiss at 12:5–10) (emphasis in original).]

18        **B.    Documents Being Withheld: "Wu Documents," "Anonymous Spreadsheets," and
             "Business Emails"**
19

20        In response to a subpoena issued by SanDisk and served upon IPValue in May 2012, IPValue

21   produced some documents and subsequently served a privilege log regarding documents withheld

22   from production.   Of 149 entries on the IPValue privilege log, none of the entries identify outside

23   counsel as having authored or received the documents.   Moreover, 137 of those entries leave the

24   recipient field blank and vaguely identify "IPValue" (the entity) as the author.   [Ex. D, IPValue

25   privilege log.]   This includes entries 1–109, 111–114, and 125–149.   These 137 documents authored

26

27   [1] All exhibits cited in this motion are attached to the Declaration of Chuck Ebertin in Support of
    SanDisk Corporation's Motion to Compel Production of Subpoenaed Documents from IPValue
28   Management, Inc., filed herewith.

by "IPValue" can further be classified into three subcategories based upon the boilerplate descriptions found in the privilege log.

Wu Documents: The Wu Documents are authored by "IPValue" and allegedly contain the "legal analysis of attorney A. Wu," which presumably refers to IPValue employee Andrew Wu. These documents include:

- ████████████████████████████████████████████ Entry Nos. 2, 5, 6, 30–32, 107–109, 113, 114;

- ████████████████████████████████████████████ Entry Nos. 1, 3, 4, 7–29, 33, 34, 43, 45–63, 77, 90, 98, 106, 125–149 .

[See generally Ex. D, IPValue Privilege Log.]

Anonymous Spreadsheets: The Anonymous Spreadsheets include spreadsheets authored by "IPValue" that allegedly reflect the legal advice of an unidentified attorney at IPValue. These include:

- ████████████████████████████████████████████ Entry Nos. 35, 36, 37–42, 44, 64–76, 78–89, 91–97, 99–105, 111.

[Id.]

Business Emails: Last, out of 149 documents on IPValue's privilege log, 12 of the documents are emails. The Business Emails include 12 emails received by employees of IPValue (including in-house counsel), each of which includes the following boilerplate description:

- ████████████████████████████████████████████ Entry Nos. 110, 112, 115–124.[2]

[Id.] IPValue withholds the Wu Documents, Anonymous Spreadsheets, and Business Emails from production on the grounds of attorney client privilege, attorney work product, and a blanket assertion of the common interest doctrine.

---

[2] Of note, ████████████████████ who appears to be employed by neither Round Rock nor IPValue.

**III. ARGUMENT**

**A. Legal Standard**

1. Work Product

"To qualify for work-product protection, documents must be (1) prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *U.S. v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011); *see also Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS (PSG), 2011 WL 3443923, at *2 (N.D. Cal. Aug. 8, 2011) (analyzing *Richey* case and stating that the burden is on the party seeking work product protection).

"[A] document should be deemed prepared 'in anticipation of litigation' and thus eligible for work product protection under Rule 26(b)(3) if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004). Courts have applied this standard by affording protection when the document "would not have been created in substantially similar form but for the prospect of that litigation." *Id.* at 908; *see also* Fed. R. Civ. P. 26(b)(3) advisory committee's note (1970) (explaining that "materials assembled in the ordinary course of business . . . are not under the qualified immunity provided by this subdivision"); *Richey*, 632 F.3d at 568 (9th Cir. 2011); *ChevronTexaco*, 241 F. Supp. 2d at 1084 (explaining that work product does not apply if the document "would have been created in essentially similar form irrespective of litigation"). The "prospect of litigation" must be identifiable and either imminent or pending. *Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987) (discussing *Hickman v. Taylor*, 329 U.S. 495 (1947)); *see also Martin v. Evans*, No. C 08-4067 JW (MEJ), 2012 WL 1894219, at *5 (N.D. Cal. May 23, 2012) (same). While litigation need not have already commenced, "there must be more than a remote possibility of litigation." *Conner Peripherals v. W. Digital Corp.*, No. C93-20117 RMW/EAI, 1993 WL 726815, at *4 (N.D. Cal. June 8, 1993).

2. Attorney-Client Privilege

The Ninth Circuit sets forth "eight essential elements" for determining when the attorney-client privilege applies:

SANDISK'S MOTION TO COMPEL IPVALUE'S PRODUCTION OF DOCUMENTS 2193019

4

Case No. _____

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992). The burden to prove that the privilege applies is on the party asserting the privilege. *Id.* at 1070; *see also Advante Int'l Corp. v. Mintel Learning Co.*, No. C 05-01022, 2008 WL 108900, at *2 n.5 (N.D. Cal. Jan. 2, 2008) (Seeborg, M.J.) (stating that the "burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it."). Because the attorney-client privilege is in derogation of the search for truth, it is "narrowly and strictly construed." *U.S. v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989). In order to "prevent abuse and assure the availability of relevant evidence . . . the privilege is limited to only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Grand Jury Investigation*, 974 F.2d at 1070.

### 3. Privilege Logs Must Be Sufficiently Detailed to Enable Other Parties to Assess the Claim

A privilege log is "one means of sufficiently establishing" the applicability of a privilege. *Grand Jury Investigation*, 974 F.2d at 1071. "[A] privilege log should be provided that identifies and describes the documents in sufficient detail to 'enable other parties to assess the claim.'" *Elan Microelectronic*, 2011 WL 3443923, at *2. The privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). In particular, a privilege entry should contain at least the following information:

(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.

1  *Grand Jury Investigation*, 974 F.2d at 1071. If a party cannot "justify its failure to provide the
2  required information [in its privilege log] in a timely manner, [its] objections are deemed waived."
3  *Elan Microelectronics*, 2011 WL 3443923, at *2.

4
        **B.      The Wu Documents, Anonymous Spreadsheets, and Business Emails Should Be
5               Produced Because the Privilege Log Is Insufficient**

6          The content of IPValue's privilege log demonstrates IPValue's inability to establish work
7  product and attorney client privilege. For each of the Wu Documents and Anonymous Spreadsheets,
8  the IPValue privilege log lists "IPValue" (the entity) as the author and does not name any specific
9  individuals who either authored or received the document. [*See* Ex. D (IPValue privilege log).]
10 Further, the Anonymous Spreadsheets are purportedly "reflecting legal advice and analysis," but the
11 IPValue privilege log fails to provide which specific attorney is allegedly providing that advice.
12 [*See id.*] Accordingly, IPValue fails to describe "(a) the attorney and client involved[,] . . . (c) all
13 persons or entities shown on the document to have received or sent the document, [or] (d) all persons
14 or entities known to have been furnished the document or informed of its substance."[3] *See Grand*
15 *Jury Investigation*, 974 F.2d at 1071. As this Court has previously stated, "Because Advante failed
16 to provide such evidence or other evidence sufficient to show that the document in dispute was ever
17 transmitted from client to attorney, Advante has not met its burden to show the document is
18 privileged." *Advante*, 2008 WL 108900, at *2.

19         Here too, IPValue is unable to establish that the unidentified authors of the Wu Documents
20 and Anonymous Spreadsheets ever transmitted the documents from attorney to client (or vice versa),
21 failed to establish which attorney provided the legal advice in the Anonymous Spreadsheets and
22 Business Emails, and thus cannot meet its burden to show the documents should be immune to
23 discovery. Accordingly, the documents should be produced. *See Elan Microelectronics*, 2011 WL
24 3443923, at *1, *5–*6 (deeming privilege objections waived because individual entries on privilege
25 log fail to name the U.S. counsel who was involved or directed the specific communications for
26 which privilege is claimed); *Smithkline Beechman Corp. v. Apotex Corp.*, 193 F.R.D. 530, 539 (N.D.

27
28 ³ Similarly, the Business Emails reflect the "legal analysis of IPValue," but the privilege log fails to
   identify which specific attorney is allegedly providing that legal advice to which client. [*See* Ex. D.]

1  Ill. 2000) (ordering production of documents that fail to name specific individuals as authors or
2  recipients because "where the client is a corporation, the privilege is waived if the communications
3  are disclosed to employees who did not need access to the communication," and it is "impossible to
4  assess whether such generically described persons had any need for, or responsibility to act upon,
5  such allegedly confidential information"); *see also In re Rivastigmine Patent Litigation*, 237 F.R.D.
6  69, 83 (S.D.N.Y. 2006) ("Without information identifying the individuals involved in the particular
7  communications, it is impossible for the plaintiffs to meet their burden of establishing the 'attorney'
8  element of the attorney-client privilege.").

9      **C.    Attorney-Client Privilege Does Not Apply to the Wu Documents, Anonymous
10          Spreadsheets, and Business Emails**

11      Even if IPValue had provided a proper log, the Wu Documents, Anonymous Spreadsheets,
12  and Business Emails would still not be protected by the attorney client privilege. Although
13  communications involving attorneys are generally presumed to be privileged, "the presumption that
14  attaches to communications with outside counsel does not extend to communications with in-house
15  counsel [b]ecause in-house counsel may operate in a purely or primarily business capacity in
16  connection with many corporate endeavors." *Lenz v. Universal Music Corp.*, No. C 07-3783 JF
17  (RS), 2009 WL 3573990, at *2 (N.D. Cal. Oct. 30, 2009) (Seeborg, J.) (quoting *ChevronTexaco*, 241
18  F. Supp. 2d at 1076). The Wu Documents purportedly reflect the "legal analysis" of Mr. Wu—an
19  in-house attorney employed by IPValue—               (even though Mr. Wu
20  is neither the author nor the recipient), and there is no evidence that the Anonymous Spreadsheets
21  even involve an attorney. Further, the Business Emails include correspondence between in-house
22  attorneys and employees of IPValue.[4] Because the communications involve in-house counsel,
23  IPValue "must make a 'clear' showing that the 'speaker' made the communications for the purpose
24  of obtaining or providing legal advice." *ChevronTexaco*, 241 F. Supp. 2d at 1076; *accord Oracle*
25  *America, Inc. v. Google, Inc.*, No. C-10003561-WHA (DMR), 2011 WL 3794892, at *4 (N.D. Cal.

[4]

1   Aug. 26, 2011) (analyzing *ChevronTexaco*, 241 F. Supp. 2d at 1076 as holding that a communication

2   involving "in-house counsel warrants heightened scrutiny").

3       IPValue cannot make such a "clear showing" because neither IPValue nor Mr. Wu were

4   hired by Round Rock to provide legal advice:

> Round Rock did not retain a California-Licensed attorney. . . . While SanDisk makes
> much of the fact that one such IPValue employee—Andrew Wu—is a California-
> licensed attorney (SanDisk Br. at 5), Round Rock did not retain either IPValue
> (which is not a law firm) or Mr. Wu to act as *attorneys* for Round Rock. IPValue's
> decision to staff Mr. Wu in connection with providing contractual services to Round
> Rock thus does not demonstrate *Round Rock's* purposeful availment of California
> laws.

9   [No. 3:11-cv-05243-RS, Dkt. No. 45 (Def.'s Reply in Supp. of Its Mot. to Dismiss at 12:5–10)

10  (emphasis in original).] Moreover,

11

12

13                                                    [Ex. B (PCA) at ¶ 4.3; *see also* Ex. C (deBlasi

14  Dep. Tr.) at 65:19–25 (testifying that

15

16              .] The documents generated by IPValue in connection with the Round Rock-

17  IPValue relationship are not subject to the attorney-client privilege, because they are not "sought from

18  a professional legal adviser in his capacity as such, and the communications [do not] relate to that legal

19  advice." *See Diagnostics Systems Corp. v. Symantec Corp.*, No. SA CV 06-1211 DOC (ANx), 2008

20  WL 9396387, at *7 (C.D. Cal. Aug. 12, 2008) (analyzing *ChevronTexaco*, 241 F. Supp. 2d at 1075).

21      Second, far from acting as an adviser in his legal capacity, Mr. Wu and the other IPValue

22  employees were hired by Round Rock to perform the following non-legal functions, including

23

24                                                                      [Ex. B (PCA) at ¶ 3.1.]

25  These non-legal functions are reflected in the Anonymous Spreadsheets, which purportedly include:

26

27

28

SANDISK'S MOTION TO COMPEL IPVALUE'S              8                     Case No. _____
PRODUCTION OF DOCUMENTS
2193019

1   [Ex. E, Letter from R. Cowell to D. Tobin (Oct. 31, 2013) at 3 (emphasis added).] Accordingly, the

2   "primary purpose of the communications" set forth in the Wu Documents, Anonymous

3   Spreadsheets, and Business Emails was business and financial advice, and not legal advice. *See*

4   *ChevronTexaco*, 241 F. Supp. 2d at 1076, 1078 (ordering production because the "contents of these

5   documents are purely financial.   They reflect factual information used to implement the

6   transaction."); *Lenz*, 2009 WL 3573990 at *2 (ordering production of communications because "it is

7   entirely plausible that . . . such notices may be dispatched as part of a business strategy to appease

8   clients"); *Diagnostics Systems*, 2008 WL 9396387, at *6 (ordering production of a presentation

9   made by in-house counsel regarding "how to identify patents to acquire and 'targets' to assert them

10   against, how to 'assess value,' and how to develop an 'assertion plan'"). Such "functions are clearly

11   business functions, and documents resulting from these functions cannot be categorized in sweeping

12   assertions of privileges and protection in order [to] shield the documents from discovery simply

13   because Vella is a lawyer." *Diagnostics Systems*, 2008 WL 9396387, at *6. This is certainly true for

14   the Wu Documents of unknown authorship, and all the more so regarding the Anonymous

15   Spreadsheets which do not even identify a lawyer.

16
17

    **D.**     **Attorney Work Product Does Not Apply to the Wu Documents, Anonymous Spreadsheets, and Business Emails**

18       These Wu Documents, Anonymous Spreadsheets, and Business Emails do not qualify for

19   work product protection because they were prepared in the ordinary course of business to reflect

20   business advice. In *Diagnostics Systems*, the court denied work product protection and attorney

21   client privilege to a wide swath of documents from non-practicing entity Diagnostics Systems Corp.

22   ("DSC"), even though most of the documents were generated by attorneys who worked at DSC.

23   2008 WL 9396387 at *5. DSC's management team was staffed primarily with attorneys who, "in

24   addition to acting as attorneys, . . . also functioned in the capacity of corporate executives to further

25   the business goals of DSC," whose primary purpose is to "either attempt to license the patents or

26   enforce them through litigation and judgment." *Id.* at *2–3, 5. The court thus found, for example,

27   that a certain attorney-prepared presentation was prepared in pursuit of a "business function" and not

28   work product, as it "focused on the business of how to identify patents to acquire and 'targets' to

    9     

1    assert them against, how to 'assess value' and how to develop an 'assertion plan.'" *Id.* at *6.

2    Analogously, IPValue's role in the IPValue-Round Rock relationship is:

3

4    [Ex. B (PCA) at ¶ 3.1.] "If the Court were to adopt DSC's

5    position with respect to work product doctrine, virtually all activities engaged in by a company

6    premised entirely on licensing and/or enforcing patents via litigation would be classified as 'in

7    anticipation of litigation' and would therefore be work product." *Diagnostics Systems,* 2008 WL

8    9396387 at *7. It is not surprising that "[s]uch a sweeping application of work product doctrine is

9    unsupported." *Id.* (providing string cite to other cases). So too with the Wu Documents,

10   Anonymous Spreadsheets, and Business Emails.

11   Although IPValue claims that litigation was anticipated with respect to many of these

12   documents, the record negates this fact. For example,

13

14   [Ex. C (deBlasi Dep. Tr.) at 20:3−7.] Further, Mr. Desmarais

15   testified that

16   [Ex. F (Desmarais Dep. Tr.) at 88:11−25.] The *Diagnostic Systems* court

17   held that such offers to license "are a central aspect of DSC's business model" and because "DSC

18   initially pursued its business to monetize the patents, and had not yet formalized specific litigation

19   plans"; the court denied DSC the opportunity to so broadly sweep such licensing negotiations under

20   a claim of work product and privilege. *Id.* at *6. Here too, the Wu Documents, Anonymous

21   Spreadsheets, and Business Emails pertain to IPValue's licensing business and do not appear to

22   "formalize specific litigation plans." *See id; see also Conner Peripherals,* 1993 WL 726815, at *4

23   (requiring "more than a remote possibility of litigation").

24   Accordingly, the Court should deny work product protection.

25   **E.    Common Interest Doctrine Does Not Create a Privilege**

26   The IPValue privilege log asserts the "common interest privilege doctrine" by means of a

27   footnote applying indiscriminately to all 149 documents on the IPValue privilege log. [Ex. D

28   (IPValue privilege log) at p. 10.] However, the privilege log fails to identify which specific

1 documents are subject to the common interest doctrine, and does not identify which of the

2 documents were sent to or received from third parties. "[A] blanket claim as to the applicability of

3 the privilege does not satisfy the burden of proof." *IP Co., LLC v. Cellnet Technology, Inc.*, No.

4 C08-80126 MISC MMC (BX), 2008 WL 3876481, at *3 (N.D. Cal. Aug. 18, 2008) (further

5 explaining that "the party asserting the privilege bears the burden of establishing its existence and

6 must make a clear showing that the asserted objection applies"). Moreover, the "common interest

7 doctrines are not privileges in and of themselves. Rather, they constitute exceptions to the rule on

8 waiver where communications are disclosed to third parties." *Nidec Corp. v. Victor Co. of Japan*,

9 249 F.R.D. 575, 578 (N.D. Cal. 2007). As explained above, the IPValue documents are neither

10 privileged nor protected by the work product doctrine, and thus the common interest doctrine cannot

11 create a privilege where none exists.

12 **IV.    CONCLUSION**

13    For the reasons set forth above, SanDisk respectfully requests the Court to compel IPValue to

14 produce Entry Nos. 1–149 from the IPValue Privilege Log, which includes: Entry Nos. 2, 5, 6, 30–

15 32, 107–109, 113, 114 (Wu Documents); Entry Nos. 35–42, 44, 64–76, 78–89, 91–97, 99–105, 111

16 (Anonymous Spreadsheets); and Entry Nos. 110, 112, 115–124 (Business Emails).

17

18 Dated: November 27, 2013                          VINSON & ELKINS LLP

19                                                        By:    */s/ Chuck P. Ebertin*

20                                                               Chuck P. Ebertin

21                                                               Attorneys for Plaintiff
                                                                SanDisk Corporation

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

I, Chuck Ebertin, certify that:

3

On November 27, 2013, I caused a copy of **PLAINTIFF SANDISK CORPORATION'S**

4

**NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF ITS MOTION**

5

**TO COMPEL PRODUCTION OF SUBPOENAED DOCUMENTS FROM IPVALUE**

6

**MANAGEMENT INC.** to be served on counsel for IPVALUE Management Inc.

7

DESMARAIS LLP

8

Jon T. Hohenthaner
jhohenthaner@desmaraisllp.com

9

John C. Spaccarotella
jspaccarotella@desmaraisllp.com

10

Ameet A. Modi
amodi@desmaraisllp.com

11

Richard M. Cowell

12

rcowell@desmaraisllp.com
Andrew Heinz

13

aheinz@desmaraisllp.com
230 Park Avenue

14

New York, NY 10169

15

16

• by transmitting via electronic mail a true and correct copy of the above-listed document

17

scanned into an electronic file in Adobe "pdf" format.

18

I declare under penalty of perjury under the laws of the United States of America that the

19

above is true and correct. Executed on November 27, 2013, in Palo Alto, California.

20

21

*/s/ Chuck P. Ebertin*
Chuck P. Ebertin

22

23

24

25

26

27

28

SANDISK'S MOTION TO COMPEL IPVALUE'S
PRODUCTION OF DOCUMENTS
2193019

12

Case No. _____